## SETTLEMENT AGREEMENT AND FULL RELEASE OF CLAIMS

This Settlement Agreement and Full Release of Claims ("Agreement") is made this ___ day of February 2020 by and between Jesus Garcia Gonzalez, Emiliano Garcia, Marciano Garcia, and Fransisco Flores, on behalf of each of their heirs, executors, administrators, successors, and assigns (collectively, "Releasors"), and Eftihia Rest Inc. (also known as "Tom's Restaurant") and Michael Zoulis, on behalf of each of their heirs, executors, administrators, successors, and assigns (collectively, "Releasees") (together with Releasors, the "Parties").

WHEREAS, each of the Releasors work as busboys or grillmen for Eftihia Rest Inc.;

WHEREAS, on or about November 12, 2018, on behalf of himself individually and all others similarly situated, Jesus Garcia Gonzalez (the "Named Plaintiff") commenced a civil action in the United States District Court, Southern District of New York, Index No. 1:18-cv-10493 (GBD) (the "Action") against the Releasees;

WHEREAS, Emiliano Garcia, Marciano Garcia, and Fransisco Flores (the "Opt-In Plaintiffs") filed, on or about April 11 and April 17, respectively, a form indicating their consent to become plaintiffs to the Action;

WHEREAS, the Parties, through their respective counsel, engaged in substantial settlement discussions, including the exchange of documents and information, a deposition of the Named Plaintiff, and private mediation;

WHEREAS, to avoid the uncertainties and expenses of further litigation, and to effectuate a compromise of the Parties' respective legal positions without any admission of wrongdoing or liability, the Parties reached an agreement in-principle to settle and resolve the Action and any and all other disputes between them; and

WHEREAS, the Parties now wish to memorialize the full and complete terms of the agreement in-principle through this Agreement, which upon execution and approval by the Court shall replace and supersede all prior verbal and written agreements between the Parties;

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. Settlement Payments.

   a) Commencing within thirty (30) days after either the Effective Date of this Agreement (as defined below) or delivery of a completed Form W-9 for Releasors' counsel, whichever is later, Releasees shall provide pursuant to the schedule indicated in the following subparagraphs (i) through (v):

i.    Four separate checks made payable to "Jesus Garcia Gonzalez," in the amount of Seven Thousand Three Hundred Twenty Five Dollars and Twelve Cents ($7,325.12), less all applicable taxes, withholdings, and other deductions required by law. Releasees will mail one check per month to counsel for Jesus Garcia Gonzalez, specifically to Michael Samuel, Esq. at Samuel & Stein, 38 W. 32nd St., Suite 1110, New York, NY 10001, such that the entire four check Settlement Payment for Mr. Gonzalez will be satisfied within four months of the Effective Date.

ii.    Four separate checks made payable to "Emiliano Garcia," in the amount of Five Thousand Two Hundred Fifteen Dollars and Fifty-Six Cents ($5,215.56) less all applicable taxes, withholdings, and other deductions required by law. Releasees will mail one check per month to counsel for Emiliano Garcia, specifically to Michael Samuel, Esq. at Samuel & Stein, 38 W. 32nd St., Suite 1110, New York, NY 10001, such that the entire four check Settlement Payment for Emiliano Garcia will be satisfied within four months of the Effective Date.

iii.    Four separate checks made payable to "Marciano Garcia," in the amount of Eight Thousand Seven Hundred Twenty Two Dollars and Fifteen Cents ($8,722.15), less all applicable taxes, withholdings, and other deductions required by law. Releasees will mail one check per month to counsel for Marciano Garcia, specifically to Michael Samuel, Esq. at Samuel & Stein, 38 W. 32nd St., Suite 1110, New York, NY 10001, such that the entire four check Settlement Payment for Marciano Garcia will be satisfied within four months of the Effective Date.

iv.    Four separate checks made payable to "Fransisco Flores," in the amount of Seventeen Thousand Seventy Dollars and Forty Nine Cents ($17,070.49), less all applicable taxes, withholdings, and other deductions required by law. Releasees will mail one check per month to counsel for Fransisco Flores, specifically to Michael Samuel, Esq. at Samuel & Stein, 38 W. 32nd St., Suite 1110, New York, NY 10001, such that the entire four check Settlement Payment for Fransisco Flores will be satisfied within four months of the Effective Date.

v.    Four separate checks shall be made payable to "Samuel & Stein" in the amount of Nineteen Thousand One Hundred Sixty Six Dollars and Sixty Six Cents ($19,166.66) representing attorneys' fees and costs, for which a Form 1099 will be issued to Releasors' counsel. Releasees will mail one check per month to Michael Samuel, Esq. at Samuel & Stein, 38 W. 32nd St., Suite 1110, New York, NY 10001, such that the entire four check payment for attorneys' fees and costs will be satisfied within four months of the Effective Date.

b)    Releasors expressly acknowledge that Releasees have not provided them with any tax advice with respect to the Settlement Payments described herein, and that Releasees are not obligated to provide them with any such tax advice.

c)    Releasors acknowledge that the Settlement Payments encompass and satisfy any and all outstanding compensation of any kind which Releasees allegedly owe them, with respect to hourly wages, overtime wages, tips, spread of hours payments, wage notice and/or wage statement damages, and other forms or categories of compensation and/or damages, whether arising under the Fair Labor Standards Act, the New York Labor Law, and/or any other federal, state, or local statutes, orders, laws, ordinances, regulations, or the like, or case law, regarding the payment of wages to employees. As such, Releasors acknowledge that the

Settlement Payments extinguish their Fair Labor Standards Act and New York Labor Law claims, including, without limitation, any claims arising from Releasors' employment with Eftihia Rest Inc. related to wage and hour and/or pay practices for all unpaid wages, retaliation, liquidated damages, other federal, state, or local statutory penalties, costs, interest, and attorneys' fees under those same statutes. Releasors further acknowledge and agree that (i) the Settlement Payments are adequate consideration for all of the terms of this Agreement; and (ii) any monetary or other benefits other than the Settlement Payments, which, prior to the execution of this Agreement, Releasors may have earned or accrued or to which Releasors may have been entitled in the course of their employment, have been paid, or such payments or benefits have been released, waived, or settled pursuant to this Agreement.

2. <u>Releasors' Release of Wage-Related Claims.</u>

   a) In consideration of the Settlement Payments, and except as to such rights or claims as may be created by this Agreement, Releasors hereby release Releasees and Releasees' parents, subsidiaries, divisions, affiliates and other related entities, and each of their past or present officers, directors, owners, shareholders, investors, fiduciaries, agents, trustees, supervisors, or employees, and all persons acting by, through, under, or in concert with any of the foregoing parties (collectively "Releasees and Affiliated Parties"), from any and all claims, debts, losses, demands, obligations, liabilities, causes of action, charges, grievances, complaints, or suits of any type or nature, whether known or unknown, contingent or non-contingent, suspected or unsuspected (hereinafter "Claim" or "Claims") arising from Releasors' employment with Eftihia Rest Inc. related to wage and hour and/or pay practices;

   b) Arising under any applicable federal, state, local, or other statutes, law, ordinances, regulations, or the like, or case law, arising from Releasors' employment with Eftihia Rest Inc. related to wage and hour and/or pay practices;

   c) for damages, including without limitation, punitive, liquidated, or compensatory damages, or for attorneys' fees, expenses, interest, costs, wages, or injunctive or equitable relief relating to wage and hour and/or pay practices.

3. <u>Dismissal of the Action with Prejudice.</u> Within seven (7) days after the Effective Date of this Agreement (as defined below), Releasors agree to dismiss the Action with prejudice by authorizing their counsel to execute and file the Stipulation of Dismissal attached hereto as Exhibit A.

4. <u>Covenant Not to Sue and No Actions Pending.</u> Releasors represent and warrant that, other than the Action, which the Parties hereby agree should be dismissed with prejudice by the Court by virtue of this Agreement, none of them have filed or commenced any complaints, claims, actions, or proceedings of any kind against any of the Releasees with any federal, state, or local court or any administrative, regulatory, or arbitration agency or body relating to wage and hour and/or pay practices. Releasors acknowledge that, in the event such complaints, claims, actions, or proceedings have been filed, this Agreement shall render them null, void, and dismissed with prejudice, and Releasors hereby expressly waive their right to pursue such complaints, claims, actions, or proceedings in any manner.

To the fullest extent permitted by law, Releasors agree not to commence, maintain, prosecute, or participate in any action or proceeding in any court or agency against any of the Releasees and Affiliated Parties with respect to any act, omission, transaction, or occurrence up to and including the date of the execution of this Agreement relating to wage and hour and/or pay practices, including without limitation any governmental audit or investigation of Releasees. Releasors further agree to notify any governmental agency conducting any such action, proceeding, audit or investigation on their behalf that this Agreement has resolved such action, proceeding, audit or investigation. Releasors further agree, to the fullest extent permitted by law, not to instigate, encourage, assist, or participate in an action or proceeding relating to wage and hour and/or pay practices commenced by anyone else against the Releasees and Affiliated Parties. In the event that any government agency seeks to obtain any relief on behalf of Releasors with regard to any claim released and waived herein, Releasors covenant not to accept, recover, or receive any monetary relief or award that may arise out of or in connection with any such proceeding.

5.  <u>No Admission of Wrongdoing and Non-Disparagement.</u>

a)  The Parties expressly understand and agree that this Agreement does not evidence or constitute the Releasees' admission regarding any claim within the Action and that the Releasees are not liable to any of the Releasors for any monetary damages. The Parties further understand and acknowledge that the Releasees deny the material factual allegations from which the Action arose and the legal sufficiency of Releasors' claims therein.

b)  Consistent with the paragraph above, Releasors acknowledge and agree that they are not a "prevailing party" as that term may be construed, defined, or applied under any federal, state, local, or other statute, order, law, ordinance, regulation, or the like, or under or with respect to all statutes, orders, laws, ordinances, regulations, or the like, or case law, referred to in Paragraph 2 of this Agreement. Releasors shall not suggest or represent to any person or entity, directly or otherwise, that they are, in any manner, a "prevailing party" in connection with the Action or otherwise.

c)  The Parties hereby represent and agree that they shall not, directly or indirectly:

i.   make any written or oral statements, suggestions, or representations that any Releasee has made or implied any admission of wrongdoing or liability; and/or

ii.  except as may be required by law, make any oral or written negative, disparaging, or otherwise adverse statements, suggestions, or representations of or concerning each other.

iii. Nothing in this paragraph 5 shall prevent Releasees from making any written or oral statements, suggestions, or representations that are reasonably necessary for the management of the business and workforce of Tom's Restaurant.

6.  <u>Remedies and Damages for Breach of this Agreement.</u>  The Releasors acknowledge and agree that any misrepresentation by them within this Agreement or any breach of their covenants and other obligations set forth herein, will cause irreparable harm to the Releasees, which damages and injuries will not be measurable or susceptible to calculation.

Accordingly, if breach has been determined to have been committed by any Releasor in accordance with paragraph 5, the breaching Releasor shall be required to pay to the Releasees liquidated damages of $5,000.00, which amount shall be the maximum liquidated damages pursuant to this paragraph 6. The Releasors further acknowledge and agree that any breach or threatened breach of this Agreement shall entitle the Releasees to obtain injunctive relief preventing potentially disparaging remarks prohibited by this Agreement, and the Releasees will not be required to post any bond in connection with obtaining any such injunctive relief. The Parties further acknowledge and agree that, in connection with any claim for injunctive relief or the pursuit of liquidated damages in connection with this Agreement, the prevailing party for such claim shall be entitled to indemnification for all related monetary losses, costs, and reasonable attorneys' fees.

7. Choice of Law. This Agreement shall be governed by the laws of the State of New York, excluding any choice of law principles. Any action to enforce this Agreement must be brought in a state or federal court of competent jurisdiction located in New York County, New York, and the Parties expressly, irrevocably, and unconditionally consent to the personal jurisdiction of said court(s).

8. Integration, Construction, and Modification. This Agreement constitutes the complete understanding between the Parties and supersedes any and all other agreements, understandings, and discussions, whether written or oral, between the Parties. The terms and conditions of this Agreement are the result of arms-length negotiations between the Parties, each of which has been represented by counsel during the negotiations. No provision of this Agreement shall be construed against any Party by reason of its drafting of that provision. If any portion of this Agreement is held by a court to be invalid, illegal, or unenforceable in any respect, the remainder of this Agreement shall not be affected thereby, and shall be construed without such portion, and shall be valid and enforceable to the fullest extent permitted by laws. This Agreement may not be modified or amended unless done in writing and signed by each Party.

9. Effective Date. The "Effective Date" of this Agreement shall be the first day after: (i) full execution of this Agreement by all Parties; and (ii) the Court's approval of this Agreement. In the event that Named Plaintiff and the Opt-In Plaintiffs execute this Agreement, and all other conditions set forth in this Paragraph 9 have been met, the Effective Date shall be deemed to have occurred and payments to all Releasors who have executed this Agreement and Releasors' counsel shall be made in accordance with this Agreement.

10. Voluntary Execution of this Agreement. Releasors represent and agree as to themselves individually that:

a) They are not suffering from any disability or impairment that would render them unable to consider or understand this Agreement;

b) They have carefully reviewed and fully understand all of the provisions of this Agreement;

c) They are freely and voluntarily entering into this Agreement and knowingly discharging all of the Releasees and Affiliated Parties in accordance with the terms

contained herein in exchange for the consideration described herein, which they acknowledge exceeds anything of value to which they were and are already entitled;

d) They have consulted with their attorneys, Samuel & Stein, regarding the terms and conditions set forth within this Agreement.

11. <u>Counterparts and Original Signatures</u>.    This Agreement may be executed in counterparts, each of which shall serve as an original as against any Party who signed it, and all of which taken together shall constitute one and the same document.  A copy, including a facsimile copy, of a Party's signature on this Agreement shall be acceptable in any action against that Party to enforce this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have executed this Settlement Agreement, Release, and Waiver.

**JESUS GARCIA GONZALEZ**

Date: 2/24/20

**EMILIANO GARCIA**

Date: 2/24/20

**MARCIANO GARCIA**

Marciano Garcia        Date: 2/25/20

**FRANSISCO FLORES**

Date: 2/25/20

**EFTIHIA REST INC.**

By:_____        Date: 3-5-20

Name: Michael Zoulis

Title: Treasurer

**MICHAEL ZOULIS**

Date: 3-5-20